Christopher WILSON, Petitioner,

v.

Elijah TARD, Jr., Superintendent, et al., Respondents.

Civ. A. No. 84–672.

United States District Court, D. New Jersey.

Sept. 14, 1984.

---

Joseph H. Rodriguez, Public Defender by John Burke, Asst. Deputy Public Defender, Appellate Section, East Orange, N.J., for petitioner.

Irwin I. Kimmelman, Atty. Gen., State of N.J. by Arlene R. Weiss, Deputy Atty. Gen., Div. of Crim. Justice, Appellate Section, Trenton, N.J., for respondents.

## OPINION

STERN, District Judge.

Christopher Wilson petitions for issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that the jury instructions given in his manslaughter trial prejudiced his constitutional right to be presumed innocent until the state had proven every element of the crime with which he was charged beyond a reasonable doubt. We will issue the writ: the trial court's jury instructions allocated to petitioner the burden of proving a defense which would directly negative the culpability element of the offense with which he was charged, an error which denied petitioner his right to due process.

## FACTS

Petitioner was indicted by a Union County Grand Jury on charges of aggravated

manslaughter[1] and possession of a handgun without a permit on December 12, 1980. He pleaded not guilty to both counts and was tried before the Honorable A. Donald McKenzie, J.S.C., and a jury from March 9–12, 1981. Petitioner was charged in connection with the October 15, 1980, shooting death of his friend Rodney Brown while they and two other men were discussing which of them should be the first to use some heroin in their possession. Petitioner did not dispute that he had shot Brown, but at trial he raised as a defense an alleged mistake of fact.[2] Petitioner contended that he had pointed the gun at his friend in a joking attempt to frighten him. He testified that he had removed the magazine of bullets from the gun before he aimed it, and contended that because of his unfamiliarity with the weapon he believed he had disarmed it. However, one bullet remained in the chamber of the gun; when petitioner aimed the gun at his friend and pulled the trigger, it discharged and fatally injured the victim. Petitioner argued, however, that his belief that the gun was unloaded when he pulled the trigger was a reasonable mistake under the circumstances, and that therefore he did not possess the level of mental culpability, recklessness, necessary to find him guilty of manslaughter.

In his instructions to the jury, the trial court stressed that since the cause of Brown's death was not disputed, determination of petitioner's state of mind was critical to the state's proof of the offense of manslaughter. After first stating that the burden of proving each element of the offense beyond a reasonable doubt lay on the prosecution, the judge instructed the jury that the defense of mistake which the defendant had raised was an exception to the state's burden of proving all elements of the crime. Trial Transcript ("TT") 4–57. After summarizing New Jersey's statute on mistake, he told the jury that the burden lay on the defendant to "prove by a preponderance of the evidence" that he was mistaken in his belief that the gun was not loaded, and that "he arrived at the conclusion reasonably." He stated that the mistake would be a defense if the jury could find that "the defendant reasonably arrived at that conclusion underlying the mistake and it negates the culpable mental state required to establish the offense." TT 4–64 to 4–67.

The judge further explained that if the jury concluded that defendant's mistake did negate the culpable mental state for manslaughter it should consider, pursuant to § 2C:2–4b, N.J.Stat.Ann., whether the defendant was guilty of aggravated assault.[3]

---

1. New Jersey law provides that aggravated manslaughter occurs "when the actor recklessly causes death under circumstances manifesting extreme indifference to human life," § 2C:11–4a, N.J.Stat.Ann. "Simple" manslaughter occurs when homicide is committed "recklessly." § 2C:11–4b.

   Section 2C:2–2, N.J.Stat.Ann., defines "recklessly" in the following way:
   A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

2. In relevant part, § 2C:2–4a provides that
   Ignorance or mistake as to a matter of fact or law is a defense if the defendant reason-

ably arrived at the conclusion underlying the mistake and: 1) It negatives the culpable mental state required to establish the offense; or 2) The law provides that the state of mind established by such ignorance or mistake constitutes a defense.

3. N.J.Stat.Ann. § 2C:2–4b states that
   Although ignorance or mistake would otherwise afford a defense to the offense charged, the defense is not available if the defendant would be guilty of another offense had the situation been as he supposed. In such case, however, the ignorance or mistake of the defendant shall reduce the grade and degree of the offense of which he may be convicted to those of the offense of which he would be guilty had the situation been as he supposed.
   Aggravated assault is defined by § 2C:12–1b(4), N.J.Stat.Ann., as "knowingly under circumstances manifesting extreme indifference to the value of human life point(ing) a firearm" at another "whether or not the actor believes it to be loaded."

The jury returned after one hour and forty-five minutes of deliberation and said it was "unclear about the definition of mistake as it pertains to a reduction in charge from simple manslaughter to aggravated assault." TT 4–86. The jury was reinstructed, but it returned forty-five minutes later for another explanation of "defensive mistake." TT 4–89. After a further hour and fifteen minutes of deliberation, the jury returned a verdict finding defendant not guilty of aggravated manslaughter but guilty of the lesser-included charge of simple manslaughter, as well as guilty of the possession of a handgun charge.

On April 2, 1981, Judge McKenzie sentenced petitioner to ten years in prison, five years without parole eligibility, and to a $500 fine for the manslaughter conviction; and to five years for possession of the handgun, to be served concurrently with the manslaughter sentence. In addition, petitioner had pleaded guilty to charges of cocaine possession and possession of a handgun by a felon in connection with the same incident; he was sentenced to concurrent terms of 18 months and five years, respectively, on those charges.

Petitioner appealed his conviction to the Superior Court of New Jersey, Appellate Division, on several grounds. Among them was his contention that the burden of proof for the defense of mistake of fact had been misallocated to him in the jury charge. On April 14, 1983, the Appellate Division affirmed petitioner's conviction. As to petitioner's argument that the jury charge was in error, the court stated: "One who deliberately aims and discharges a firearm directly at another human being, thereby causing the latter's death, cannot, as a matter of law, be found to have been reasonable in his mistaken belief that the gun was unloaded or to have acted other than recklessly. The defense in question should not even have been submitted to the jury." *State of New Jersey v. Christopher Wilson*, Nos. A–3703–80T4, A–3704–80T4, April 14, 1983 (Superior Court of New Jersey, Appellate Division, *Per Curiam*) at 3.

On June 20, 1983, the Supreme Court of New Jersey denied petitioner's application for certification and direct appeal. Petitioner now seeks relief by way of petition for habeas corpus in this court.

## I.

We turn first to the decision of the Appellate Division, which amounts to a holding that one who aims a gun at another person and deliberately pulls the trigger has acted recklessly *per se;* in other words, petitioner's mental state is to be presumed from the act itself. By concluding that petitioner's mistake of fact defense should not even have been submitted to the jury, the Appellate Division drew a conclusive presumption from petitioner's acts, which amounts to "an irrebuttable direction by the court" to the factfinder to find that petitioner acted recklessly "once (it is) convinced of the facts triggering the presumption." *See Sandstrom v. Montana,* 442 U.S. 510, 517, 99 S.Ct. 2450, 2456, 61 L.Ed.2d 39 (1979).

The Supreme Court has held that it is unconstitutional to direct the factfinder to draw a conclusive presumption as to a material element of a crime because to do so would "conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime," and would "invade the factfinding function" which in a criminal case the law assigns solely to the jury. *Sandstrom,* 442 U.S. 510 at 523, 99 S.Ct. 2450 at 2459, quoting *Morrisette v. United States,* 342 U.S. 246 at 274–75, 72 S.Ct. 240 at 255–256, 96 L.Ed. 288 (1952); *see also United States v. United States Gypsum Co.,* 438 U.S. 422, 435, 446, 98 S.Ct. 2864, 2872, 2878, 57 L.Ed.2d 854 (1978). Such a presumption, relieving the state from having to prove an element of the crime, conflicts with the principle, set out by the Supreme Court in *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 323 (1970) that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to

constitute the crime with which he is charged."

It is clear that the New Jersey statute makes the existence of the mental state of recklessness an essential element of the crime of manslaughter. In fact, it was the only element of the offense at issue in petitioner's trial, since he admitted to causing the death of the victim. Therefore, by directing a finding of recklessness based upon petitioner's acts, the Appellate Division would deny petitioner a necessary constitutional protection. Its reasoning cannot stand.

## II.

Since we find that the Appellate Division erred in the grounds it stated in denying petitioner's challenge to the jury instructions, it is necessary for us to consider whether, in those instructions, the trial court erred in assigning the burden of persuasion as to mistake to the defendant and, if so, whether such an error was of constitutional dimension. We now hold that the trial judge's instruction, allocating the burden of proving the mistake of fact defense to petitioner, constitutes a violation of due process.

In *Mullaney v. Wilber*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), the Supreme Court held that the requirement of *Winship*—that the prosecution prove all elements of the crime beyond a reasonable doubt—necessarily barred the state from shifting to the defendant the burden of disproving any element of the crime charged. The Court in that case

considered a Maine trial court's jury instruction in a murder case directing the jury that, if the state proved that a killing was intentional and unlawful, the "malice aforethought" element of the crime as defined would be conclusively presumed unless the defendant rebutted it by proving, by a preponderance of the evidence, that he had acted in the heat of passion on sudden provocation. Such a showing would reduce the crime to manslaughter. The Supreme Court ruled that to presume the mental element of the crime unless the defendant could prove its absence was to violate due process. Since malice and heat of passion both went to prove or disprove the same critical disputed fact, the state must bear the burden of proving one and thereby necessarily disproving the other. Otherwise, it would not fulfill its constitutional duty to prove beyond a reasonable doubt all the elements of the crime charged. *Accord, Patterson v. New York*, 432 U.S. 197 at 206, 97 S.Ct. 2319 at 2325, 53 L.Ed.2d 281 (1977).[4]

Applying the holding of *Mullaney v. Wilber* to this case, we conclude that, in shifting the burden of proof to petitioner to establish a defense of mistake, the trial court improperly shifted to him the burden of disproving a material element of the offense.

In finding that the mistake of fact defense acts directly to contradict the mental element of recklessness, we rely on an examination of the relevant New Jersey statutes.[5] As noted, proof of the crime of

---

**4.** It is constitutional for states to shift to defendants the burden of proving by a preponderance of the evidence certain "affirmative defenses," but only within the constitutional limits imposed by *Winship* and *Mullaney*. That is, the prosecution is still constitutionally required to prove every element of the crime beyond a reasonable doubt and in so doing must disprove the negatives of those elements; no element of the offense may be presumed against the accused.

For examples of constitutionally permissible affirmative defenses, *see, e.g., Leland v. Oregon*, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952) (burden of insanity defense may be put on de-

fendant because it does not disprove an element of offense but rather exculpates defendant from responsibility for crime whose elements have been established); *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) (as defined by New York statute, state must show act and *intent* to establish murder; provocation defense does not negate element of crime, but rather is separate issue).

Such cases differ from the one before us, because here the defense in question does act directly to negate a material element of the offense.

**5.** For other cases examining statutory language to determine whether a defense is directly

manslaughter requires that the accused have committed a homicide "recklessly." Section 2C:11–4b, N.J.Stat.Ann. State law provides that a person acts recklessly "when he consciously disregards a substantial and unjustifiable risk" that his conduct would cause injury in a way that demonstrates "a gross deviation from the standard of conduct that a reasonable person" would observe in similar circumstances. Section 2C:2–2, N.J.Stat.Ann. Thus, one acts recklessly when he acts unreasonably and while aware that he is ignoring an obvious danger.

The relevant portion of the New Jersey statute on mistake provides that "Ignorance or mistake as to a matter of fact or law is a defense if the defendant reasonably arrived at the conclusion underlying the mistake and ... [i]t negates the culpable mental state required to establish the offense." Section 2C:2–4a, N.J.Stat.Ann.

■ It is clear that under New Jersey law recklessness and mistake of fact have a mirror relationship analogous to that of the mental states at issue in *Mullaney v. Wilber;* they are "two inconsistent things; thus by proving the latter the defendant would negate the former," 421 U.S. 684 at 686–87, 95 S.Ct. 1881 at 1883–1884. A showing that the actor made a reasonable mistake would establish that he did not act recklessly.

■ In the case before us, in advancing the argument that he had reasonably believed that the gun was unloaded when he pulled its trigger, petitioner had raised a defense whose proof would negate the mental element necessary to constitute manslaughter. Thus, under *Mullaney* he should have borne only the burden of raising the issue, not that of proving it. The

state was required to refute this defense beyond a reasonable doubt as an inseparable part of proving beyond a reasonable doubt that petitioner had acted recklessly and thus was guilty of manslaughter. By shifting to petitioner the burden of proving his defense by a preponderance of the evidence, the trial court unconstitutionally relieved the state of its burden of proving all the elements of the crime beyond a reasonable doubt.[6]

This violation of his constitutional rights entitles petitioner to a new trial. The writ of habeas corpus shall issue.

---

linked to proof of an element of the offense, *see, e.g., Fawell v. Czarnetsky,* 566 F.2d 381 (2d Cir. 1977), *cert. denied,* 343 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783.

**6.** In its jury charge the trial court did charge that the state had to show recklessness beyond a reasonable doubt, but that the defendant then bore the burden of proving that he suffered from a reasonable mistake of fact in order to

negate the element of recklessness. The mere fact that the instructions could have been interpreted as placing the burden of disproving an element of the offense upon petitioner constitutes constitutional error. *See, Sandstrom v. Montana,* 442 U.S. 510, 519, 99 S.Ct. 2450, 2456, 61 L.Ed.2d 39 (1979) (mere fact that the jury could have taken instruction as having persuasion-shifting effect renders it invalid.)